JOHNSON v. WOODWORTH et ux.

(Supreme Court, Appellate Division, Third Department.  November 10, 1909.)

1. DEEDS (§ 70*)—CONVEYANCE OF LAND—INADEQUACY OF CONSIDERATION.

Mere inadequacy of consideration is sufficient to avoid a conveyance of land as between the parties, where the inadequacy is so gross as to shock the conscience, the degree of inadequacy to be considered with reference to the relations existing between the parties and the apparent reasons which may exist therefor; and where a property worth $2,000 was transferred to a stranger in blood, to the exclusion of the grantor's son, with whom the grantor was living, for a consideration of less than $500, the conveyance would be deemed fraudulent, in the absence of explanation on the part of the person claiming the benefit thereof.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 173; Dec. Dig. § 70.*]

2. APPEAL AND ERROR (§ 927*)—REVIEW—NONSUIT.

On an appeal from a judgment of nonsuit, plaintiff is entitled to the most favorable inferences properly deducible from the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

3. MORTGAGES (§ 39*)—ABSOLUTE DEED AS MORTGAGE—SUFFICIENCY OF EVIDENCE.

In an action attacking a warranty deed as intended for security for money to be advanced by the grantee in accordance with a bond and mortgage on the premises executed by the grantee to the grantor, evidence *held* sufficient to go to the jury on the question whether the deed was intended as security.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 112, 113; Dec. Dig. § 39.*]

Appeal from Trial Term, Columbia County.

*For other cases see same topic &-§ NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Hiram S. Johnson, executor and trustee of Harriet L. Curtis, deceased, against Rufus H. Woodworth and wife. From a judgment of nonsuit, and an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

John C. Dardess, for appellant.
Sanford W. Smith, for respondents.

COCHRANE, J. On January 27, 1904, Mrs. Harriet L. Curtis, the plaintiff's testatrix, executed to the respondent Rufus H. Woodworth a warranty deed, the consideration therein expressed being $1, of a farm of about 100 acres. On the same day respondent and his wife executed to the deceased a bond and mortgage on the same premises, conditioned for the payment of the sum of $500 in five annual payments of $100 each, without interest, the first payment to be made at the expiration of one year. He also delivered to the deceased a written agreement containing the following language, viz.:

"In the event of my death previous to January 27, 1909 (January twenty-seven, nineteen hundred and nine), I hereby will and agree that my heirs or executors shall surrender to said Harriet L. Curtis, her heirs or executors, a deed and all right, claim and title to the property now occupied by said Harriet L. Curtis, and transferred to me by deed this 27th day of January, 1904; provided that the said Harriet L. Curtis, her heirs or assigns, shall make payment to my heirs or assigns the sum of five hundred dollars ($500) and interest on same from this date to date of payment, and also the sum of $25 to cover expense of transfer," etc.

Mrs. Curtis died in December, 1906, leaving a last will and testament, executed a few days prior to her death, in which she devised the property in question to the plaintiff, in trust for the benefit of her son, William B. Curtis, during his life, and the remainder at his death to his children.

Plaintiff by this action attacks the said deed as having been procured by fraud and imposition on the part of respondent, and he also in his complaint alleges that the deed was intended as a security for the sum of $500 to be advanced by respondent in accordance with the terms of said bond and mortgage, and that it was executed by the grantor under the belief that the same was intended as such security, and that by the repayment to respondent of such sum of $500, or such part thereof as should be advanced by him, with interest, he would reconvey the premises. The learned trial justice, on the conclusion of plaintiff's evidence, granted a nonsuit. The plaintiff contends that there was sufficient in the evidence to make a prima facie case, and that the nonsuit was error. The determination of this question requires a brief review of the evidence.

Mrs. Curtis was a widow, living on the farm in question with her son and his wife. She was about 70 years of age, and, although not mentally incapacitated, there is some evidence tending to show that she suffered somewhat from physical infirmities and weakness. She owned another farm, which was incumbered for $500. The defendant Woodworth resided only a few rods distant. His relations with the de-

ceased seem to have been such as ordinarily exist between neighbors. It does not appear that they ever had prior business transactions. There is no evidence of any negotiation leading up to the transaction in question, or that she consulted any person in reference thereto. The respondent was a justice of the peace, and himself drew all of the papers hereinbefore mentioned. The deed was witnessed by the son of Mrs. Curtis and his wife, although it does not appear that they were cognizant of its contents. There is evidence that the farm was worth $2,000. After the execution of the papers Mrs. Curtis continued to reside on the farm as before until her death, although the deed made no provision to that effect. The respondent stated after the transaction that he expected to look after and care for her as long as she lived. Within a few months after the execution of the deed, he paid to her and for her benefit upwards of $300, which was indorsed on the bond, although by the terms thereof he was not yet obligated for the payment of any amount. Included in such payment was a note held by one Beaver, and it appeared that, after paying such note, respondent told the son of Mrs. Curtis that he had paid the same and that he needed "no more security." On another occasion he told the same person that he would like to do something with the property to get money to pay the taxes and interest, although under the arrangement as claimed by him no interest was due or even payable; whereas, if the transaction was merely a security for his advancements, interest was accruing thereon. It also appeared that on the day when the deed was executed he said to the wife of William B. Curtis:

"I have things fixed now so you and Will will never want for anything."

In my opinion the evidence was sufficient to put the respondent to his proof. Property which must be assumed on this appeal to have been worth $2,000 was transferred to a stranger in blood, and to the exclusion of the grantor's son, with whom she was living, for a consideration of less than $500, when it is considered that the payments were to be distributed over a period of five years. An arrangement so unusual and unnatural cannot be lightly regarded, without some explanation on the part of the person claiming the benefit thereof, and not much evidence is necessary to impose on such person the duty of an explanation. In 6 American and English Encyclopedia of Law, 701, it is said:

"When the inadequacy of consideration is very gross, fraud will be presumed; for though in such a case there may be no positive evidence of it, yet when the inequality is so great as to shock the conscience, the mind cannot resist the inference that the bargain must in some way have been improperly obtained. As to what degree of inequality constitutes gross inadequacy, no rule can be laid down. Between the parties, it has been said, 'to set aside a conveyance, there must be an inequality so strong, gross, and manifest that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it.'"

Substantially the same rule was declared in Dunn v. Chambers, 4 Barb. 376, and Moyer v. Bloomingdale, 38 App. Div. 227, 234, 56 N. Y. Supp. 991. It is true that mere inadequacy of consideration is insufficient to avoid a sale; but that rule is not an unqualified one, and

may not in all cases prevail where the inadequacy is very great. In Byers v. Surget, 19 How. 303, 15 L. Ed. 670, the court said:

"It is insisted that inadequacy of consideration, singly, cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexed to it by the courts, namely, unless such inadequacy be so gross as to shock the conscience; for this qualification implies necessarily the affirmation that, if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of fraud."

The degree or extent of the inadequacy is to be considered with reference to the relations existing between the parties and the apparent reasons which may exist for such inadequacy. A consideration which may not be inadequate as between parties bound by the ties of affection and kinship may be grossly inadequate as between strangers, unless some explanation is vouchsafed. Now, in this case, as we have seen, there is no apparent reason why this woman should convey property worth $2,000 to her neighbor for less than $500, excluding her son from the benefit thereof.

But the plaintiff's case does not rest alone on the inadequacy of the consideration; but that feature of the case should be considered in connection with other facts and circumstances of more or less probative force:

First. From the instrument providing for a reconveyance of the property in case of the death of respondent, it is not clear that the deed was intended as an absolute and indefeasible conveyance. That instrument by its terms was only to be effective in case the grantee died before he completed his payments, and it suggests a question whether it was not intended to accomplish some undisclosed object, for the reason that it is difficult to understand how it could serve any useful purpose. Had the respondent died before completing his payments, Mrs. Curtis would have been amply protected by the bond and mortgage, if the transaction was simply a sale of property for $500 and a mortgage back to secure that amount.

Second. The fact that Mrs. Curtis remained on the property after the deed was given with the acquiescence of respondent is some evidence that she had the right to remain there, and this argument is not necessarily overcome by the respondent's statement, subsequent to the transaction, in justification thereof, that he had obligated himself for her support.

Third. The admissions of the defendant, whereby he characterized the transaction as a security and spoke of the desirability of procuring money to pay interest, and intimated to the daughter-in-law that the arrangement was such as would benefit her husband and herself, cannot be ignored. The respondent was possessed of sufficient legal ability to prepare the instruments and conduct the transaction himself, and it cannot be assumed that, in referring to the transaction as a security, he was using the term in the unsophisticated way in which ordinary laymen sometimes carelessly or ignorantly make use of legal terms without fully comprehending their meaning.

The rule is well established that, on an appeal from a judgment of nonsuit, the plaintiff is entitled to the most favorable inferences properly deducible from the evidence. The evidence here presented,

unexplained and uncontradicted, is sufficient to permit an inference that the transaction under consideration was the result, not necessarily of positive and actual fraud on the part of the respondent, but of an understanding on the part of Mrs. Curtis that she was giving security for money to be advanced to her by him. Such a conclusion might not be inevitable; but, if permissible, it was error to grant a nonsuit. A question of fact was presented, and the learned trial justice was in error in disposing of the case as if it presented only a question of law.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

POTTER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1909.)

1. RAILROADS (§ 446*)—INJURIES AT FARM CROSSING—NECESSITY OF SIGNALS.
     A farm road crossing by reason of an embankment and a high fence, was dangerous. The road and crossing were frequently used for traffic, and for three days before the injury to plaintiff's horses, by being struck by a train which approached the crossing without giving any signals, had been used continuously by 28 teams hauling ice, one of which was plaintiff's. *Held*, that a nonsuit, granted on the theory that defendant was not bound to give any signals at a crossing which was not a public highway, was erroneous, since the jury might have found that defendant had knowledge of the use to which the road was put, placing on it the duty of using ordinary care.
     [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1636, 1637; Dec. Dig. § 446.*]

2. RAILROADS (§ 413*)—FARM CROSSINGS—CARE REQUIRED—ASSENT TO USE.
     If such use of the farm crossing was assented to by defendant, it was tantamount to a license, and imposed upon defendant the duty of exercising ordinary care to safeguard those passing over the crossing.
     [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1472; Dec. Dig. § 413.*]

     McLennan, P. J., and Robson, J., dissenting.

Appeal from Trial Term, Herkimer County.

